HENRY BAKER & wife *vs.* CITY OF PORTLAND.
HENRY BAKER *vs.* SAME.

*Case—defective way—contemporaneous violation of city ordinance.*
*Verdict—motion to set aside.*

The fact that, when a resident of a city was injured by reason of a defective way, which the city was bound to keep in repair, he was driving at a "faster rate than six miles an hour," in violation of a city ordinance, is no bar to his right to recover damages for such injury, if such driving did not in any degree contribute to produce it.

The fact that the jury failed to agree upon the answer to the question whether the plaintiff was driving at a faster rate than six miles an hour, does not render it reasonably certain that a general verdict for the plaintiff, in an action for an injury sustained by reason of a defective way, is erroneous.

ON EXCEPTIONS.

CASE, for an injury occasioned by a defective highway.

There are two actions,—one for injury to Henry Baker's wife, and the other to himself.

The defendants put into the case the following city ordinance:

" No person having for the time being the care or use of any horse or other beast of burden, carriage, or draught, shall ride or drive, or cause the same to be driven through any part of the city at a faster rate than six miles an hour, under a penalty of not less than five dollars, nor more than twenty dollars for each offense."

The presiding judge instructed the jury, that, "if the plaintiff was driving at a faster rate than six miles an hour, at the time he and his wife were thrown from the carriage, yet if such driving did not in any degree contribute to produce the injuries complained of, it would be no bar to their right to recover."

The defendants filed a motion to set aside the verdict as being against law and evidence.

The case is stated in the opinion.

*J. W. Symonds*, city solicitor, for the defendants.

Within the limits of the city, the ordinance is law, having all the force of a statute, and binding citizens and strangers alike. *Pierce* v. *Bartrum*, Cowp. 269; *Gilmore* v. *Holt*, 4 Pick. 257; *Commonwealth* v. *Worcester*, 3 Pick. 462; Vandine's Case, 6 Pick. 187; *State* v. *Merrill*, 37 Maine, 329; Nightingale's Case, 11 Pick. 168; *Lowell* v. *Hadley*, 8 Met. 180; *Pedrick* v. *Bailey*, 12 Gray, 161; *Commonwealth* v. *Bean*, 14 Gray, 52; *State* v. *Freeman*, 38 N. H. 626; *Commonwealth* v. *Curtis*, 9 Allen, 266; Angell & Ames on Corp., §§ 325, 336; Comyn's Dig., By-laws A. & B.

The plaintiff was a citizen of Portland, and had constructive notice of this ordinance. Every person subject to the action of a by-law is presumed to know its import as is his duty. Angell & Ames on Corp., § 366; *Heland* v. *Lowell*, 3 Allen, 407.

A person driving on Sunday, in violation of law, cannot recover, though exercising the highest degree of care, and the injury result solely from the defect in the way. The simple fact that he is in the act of violating the law at the time of the injury, is a bar to the right of recovery. *Hinckley* v. *Penobscot*, 42 Maine, 89; *Bosworth* v. *Swansey*, 10 Met. 363. Same principle involved in case at bar.

The courts are not inclined to extend the obligation imposed by statute upon towns to keep their roads safe and convenient, to cases in which travellers are violating the law at the time of the injury. The city of Portland finds it unsafe for vehicles to be driven

through the streets at a faster rate than six miles an hour, unsafe for persons driving, and unsafe for foot passengers, and, acting within the authority conferred by the legislature, they forbid it. Upon what principle can they be held liable in damages for an injury sustained by the plaintiff, while in the act of violating that law?

The question whether the plaintiff in this case was or was not driving at a faster rate than six miles an hour was submitted to the jury, and they could not agree upon an answer. At the time of making up the exceptions, it was thought unnecessary that it should appear, the presiding justice stating that, upon suggestion of it in argument, the defendants should have full benefit of the fact.

Suppose the testimony in regard to the day on which an injury was received should be so conflicting that the jury could not determine whether it was on Sunday or another day of the week, could they render a verdict for the plaintiff?

That he was not driving in violation of law was a fact which the plaintiff was bound to prove. As in *Hinckley* v. *Penobscot*, it was held that the burden of proof was upon the plaintiff, who was traveling on Sunday, to prove that it was a work of charity or necessity. In repeated instances it has been held that the burden of proof is on the plaintiff in these cases to prove that he was not at fault at the time of the injury; that there was no negligence on his part; that he was driving according to law, and that no other cause combined with the defect to produce the injury. It was, therefore, not for the city to prove that he was driving faster than six miles an hour, but for the plaintiff to prove that he was not. This he did not do to the satisfaction of the jury.

The fact of the violation of the law by the plaintiff is a bar to such action as the one at bar. *Heland* v. *Lowell*, 3 Allen, 407, and cases cited; *Worcester* v. *Essex Bridge Corp.*, 7 Gray, 459.

The jury must find that the plaintiff was not violating the law before they can find a verdict in his favor; and the question whether or not such a violation of law contributed to the injury is immaterial.

How are the jury to determine that the illegal driving did not contribute to produce the injury? The testimony as to speed was so conflicting, that the jury could not agree. Every reduction of speed would evidently diminish the probability of the plaintiff's being thrown out; and if he had not been thrown out, and had been able to hold the reins, there would have been no injury.

A change in the rate of speed must by natural law increase or diminish the danger, while the verdict practically holds that the danger would be the same at a rate of less than six miles as it would be at a rate of more than six miles.

Defendants therefore insist that the finding of the jury, that the illegal driving did not contribute to the injury, was unwarranted by the testimony, and as the burden of proof on this point was on the plaintiff, that the verdict, even under the instructions of the court, was against evidence and the weight of evidence. It was not competent for the jury to find without evidence a fact which the plaintiff was bound to prove.

Or if the jury found their verdict, without finding that the rate of speed in no degree contributed to the injury, then the verdict is directly against the charge of the presiding judge.

*Davis & Drummond*, for the plaintiffs.

BARROWS, J. The plaintiffs suffered serious damage in person and property on the evening of Oct. 13, 1868, by reason of the upsetting of the carriage in which they were riding, in consequence of running over certain piles of stones which had been dumped in the roadway on Cumberland street, by persons in the employ of the street commissioner, and left there over night without guards or lights to protect or warn the traveler. The buggy and harness were well made and in good order, the horse well broken and kind, though spirited, the street much frequented, and the evening too dark for a man in a carriage to see obstacles of that description on the ground.

H. Baker testifies that he was driving not over five miles an

hour when the accident occurred. The defendants offered evidence tending to show that he was driving at a rate exceeding six miles an hour. There is a city ordinance prohibiting driving at a faster rate than six miles an hour, under a penalty of not less than five, nor more than twenty dollars. The jury were instructed that if plaintiffs were driving at a faster rate than six miles an hour when thrown from the carriage, yet if such driving did not in any degree contribute to produce the injuries complained of, it would be no bar to their right to recover. To this instruction the defendants except, and also present in each case a motion to set aside the verdict (which was for the plaintiffs), as against law and evidence.

Counsel for the defendants cite a strong line of cases, in which our own and other courts have held city ordinances of this and like character as binding on all who have actual or constructive notice of their existence, and as having the force of statute law within the limits to which they apply, and also cases in which it appears to have been held, with more or less distinctness, that a party seeking a remedy in damages against a town or city, or other corporation charged with the maintenance of a way or bridge, is not entitled to recover, if at the time of the accident the party plaintiff was violating a law of which he was bound to take notice.

But in all this latter class of cases it will be seen, upon examination, that the wrongful act of the plaintiffs either was, or was assumed to be, in some manner or degree contributory to the production of the injury complained of, so that the precise question here presented was not under consideration in any of them. They cannot be deemed authorities adverse to the instruction here given if the point was not raised or considered. Thus, in *Heland* v. *Lowell*, 3 Allen, 407, it seems to have been taken for granted on all hands that the plaintiff's want of care, evinced in the violation of the city ordinance, was one of the efficient causes of the accident. There may have been something in the evidence which made it certain that it was so, in which case it would be useless to raise or discuss the question which we are to pass upon. At all events the point was not taken, and the questions presented to the

court were, whether the plaintiff was bound by the ordinance, if it was not made to appear that he knew of its existence, and whether evidence of his general good character for sobriety was admissible to rebut the evidence offered in defense that he was intoxicated when the accident occurred. The rulings complained of were the rejection of the evidence of general good character for sobriety, and the instruction " that if the plaintiff, at the time of receiving the injury, was driving at a rate faster than a walk, in violation of the city ordinance, he could not recover, although he was using due care in *other* respects." It seems, from the very tenor of the instruction, to have been conceded on the part of the plaintiff, that, under the circumstances of that case, driving faster than a walk was not the " due care " which the plaintiff was bound to show he was using in *all* respects. The court recite a *dictum* from *Worcester* v. *Essex Merrimac Bridge Corp.*, 7 Gray, 459, to the effect that if the plaintiff was at the time of the accident violating a public statute or a by-law, of which he had actual or constructive notice, he could not recover damages for the accident; but they immediately refer to the true principle, adding, " and it is the established law that when a plaintiff's own unlawful act concurs in causing the damage that he complains of, he cannot recover compensation for such damage."

It is very clear that the court could not have meant that a concurrence merely in point of time between a breach of law by the plaintiff and the accident, would bar the right of the plaintiff to recover, because they had just said in *Alger* v. *Lowell*, 3 Allen, 406, that " intoxicated persons are not removed from all protection of law; the plaintiff was bound to show that he was in the exercise of due care, and the jury were so instructed: if he used such care by himself or others, his intoxication had nothing to do with the accident; the city may be liable under some circumstances for an injury sustained by . . . an intoxicated person, if the condition of the injured person does not contribute in any degree to occasion the injury." Now intoxication in the streets is a misdemeanor upon which a penalty is imposed by law as distinctly as it is by the

city ordinance, upon driving over a bridge faster than a walk (Mass. R. S., c. 130, § 18) ; and it appears as likely to contribute to the occurrence of an accident, to say the least of it; yet no one would be likely to contend that a city or town would be relieved from the consequences of its negligence in the care of its ways, merely because the sufferer was intoxicated at the time of the accident, if it were made to appear that his breach of the law in that respect had nothing to do with its occurrence. It has been settled that intoxication is not conclusive evidence of a want of ordinary care. *Stuart* v. *Machiasport*, 48 Maine, 477. In fine, recrimination is not a good plea in bar in actions of this kind, unless the plaintiff's claim originates in his offense, and he is obliged to prove the offense in order to establish his claim, or unless the commission of the offense has in some degree contributed to produce the injury, or necessarily negatives some point which the plaintiff is bound to establish in proof, in order to entitle him to a verdict.

The defendants' counsel contends that the simple fact that the plaintiff is in the act of violating the law at the time of the injury is a bar to the right of recovery. Undoubtedly there are many cases where the contemporaneous violation of the law by the plaintiff is so connected with his claim for damages as to preclude his recovery; but to lay down such a rule as the counsel claims, and to disregard the distinction implied in the ruling of which he complains, would be productive oftentimes of palpable injustice. The fact that a party plaintiff in an action of this description was at the time of the injury passing another wayfarer on the wrong side of the street, or without giving him half the road, or that he was traveling on runners without bells, in contravention of the statute, or that he was smoking a cigar in the streets in violation of a municipal ordinance, while it might subject the offender to a penalty, will not excuse the town for a neglect to make its ways safe and convenient for travelers, if the commission of the plaintiff's offense did not in any degree contribute to produce the injury of which he complains.

The soundness of the distinction recognized by the presiding

judge in the instruction now under consideration, has been affirmed
by this court in *Bigelow* v. *Reed*, 51 Maine, 325 ; *Hamilton* v.
*Goding*, 55 Maine, 428, 429.    See also, *Morton* v. *Gloster*, 46
Maine, 520 ; *Davis* v. *Mann*, 10 Mees. & Wels. 548.    But the
defendants' counsel insists that " the finding by the jury that the
illegal driving did not contribute to the injury, was unwarranted by
the testimony," and argues that a change in the rate of speed must
necessarily increase or diminish the danger, while the " verdict
practically holds that the danger would be the same at a rate of
less than six miles, as it would be at a rate of more than six miles
in an hour," inasmuch as the jury declared themselves unable to
agree whether the plaintiff was driving at the rate of more than
six miles.    Is it reasonably certain, then, that the verdict must
have been erroneous, because the jury failed to agree upon the
answer to the question whether the plaintiff was driving at a rate
exceeding six miles an hour?    Suppose half the jury thought the
plaintiff was driving at the rate of six miles and an eighth per hour,
and the other half thought his speed did not exceed six miles.
They would not agree upon the special finding, but would that
prevent them from finding that the rate of speed, whichever of the
two rates it was, did not contribute to produce the injury?    Might
they not well have found, upon the testimony here presented, that
if the plaintiff was driving at a rate not exceeding five miles an
hour, as he testified, the same results, to wit, the frightening of the
horse, his starting to run, and the upsetting of the carriage, would·
have followed?    If so, did it really make any difference as to the
issue then on trial if he was going more than six miles an hour?

We think the answers to these questions must demonstrate the
injustice of making such a test decisive of the plaintiff's right to
recover.

The true question was (on this part of the case), whether he
was using due and reasonable care under all the circumstances, or
whether a want of such care on his part contributed to produce the
injury.    We have no reason to doubt that this question was sub-
mitted to the jury in a manner calculated to give to the testimony

offered by the defendants as to the plaintiff's rate of speed all its legitimate effect, or that it was passed upon by them in a manner which must preclude our interference with the conclusion to which they arrived.

In each case the entry must be,

*Motion and exceptions overruled.*

WALTON, DICKERSON, DANFORTH, and TAPLEY, JJ., concurred.